IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | §   SA-18-CR-687-XR |
| | § |
| TRAVIS CAMERON MOLDEN, | § |
| *Defendant*. | § |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On September 19, 2018, the Defendant, Travis Cameron Molden, was charged in an Indictment with two counts: (1) Escape and (2) Felon in Possession of a Firearm. A Superseding Indictment was filed on December 18, 2019.

On March 1, 2021, the Court held a bench trial in the above-captioned cause. Defendant Travis Cameron Molden was present and represented by counsel. Prior to the bench trial the Defendant indicated that he understood his rights and knowingly waived his right to trial by jury.

After hearing the evidence, the Court has determined that Defendant is guilty beyond a reasonable doubt of violating 18 U.S.C. Section 751(a) (Escape) and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). In accordance with Federal Rule of Criminal Procedure 23(c), the Court enters these Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

1. On February 21, 2013, a Judgment was signed wherein the Defendant was committed to the Bureau of Prisons for a term of sixty months for receiving a firearm while under a felony indictment and selling a firearm to a convicted felon. *See* SA-12-CR-459; Gov't Ex. 1.

2. On or about July 26, 2017, the Defendant was transferred to the Austin Residential Reentry Center ("RRC") to complete his sentence in SA-12-CR-459. Gov't Ex. 5.

3. On October 11, 2017, the Defendant walked out of the Center at 2:00 a.m. without authorization. Testimony of Robert Garcia, Director of Austin Residential Reentry Center; Gov't Ex. 5. His release date was December 22, 2017. *Id*. The Defendant understood that his participation in Home Detention was an alternative to placement in a RRC and that he legally remained in the custody of the Bureau of Prisons and/or the U.S. Attorney General and that failure to remain at the required location may result in a prosecution for escape. *Id*. A Form BP-A0393 was issued and notice was given to the United States Marshal's Service ("USMS") and all law enforcement agencies that the Defendant was on escape status. Testimony of USMS Deputy Eric De Los Santos; Gov't Ex. 5. The Form BP-A0393 incorrectly reflected the charges the Defendant was convicted in SA-12-CR-459. That error does not serve as a defense in the charges in this case.

4. Defendant's defense that he had an earlier altercation with a supervisor at the facility and she told him to leave is not credible. The Defendant's alternative theory that he was authorized to leave BOP supervision fails for lack of credible evidence. The Defendant testified in this case. During his testimony he admitted he was a fugitive at the time of this incident, contradicting his testimony that he was told he could leave the facility.

5. On June 26, 2018, the USMS Lone Star Fugitive Task Force and the San Antonio Police Department ("SAPD") conducted an operation to locate and arrest Savawn Kyle, who was wanted on a murder warrant out of Bexar County, Texas. While conducting surveillance on a San Antonio, Texas apartment complex where Kyle was believed to be staying, law enforcement observed Travis Camero Molden drive a silver Dodge Charger into the parking lot. Testimony of William Britain; Gov't Ex. 7.

6. Kyle was observed entering the passenger's side of Molden's vehicle. Kyle was carrying a beverage in his right hand. Even if Kyle was carrying one firearm, given his apparel and lack of any

bag/backpack/gun holster, it is highly unlikely he was in possession of two firearms. Gov't Ex. 7. Law enforcement officers attempted to stop the Dodge Charger in the parking lot of the apartment complex. Gov't Ex. 7.

7. The Dodge Charger evaded the law enforcement officers and crashed into a parked vehicle in the parking lot.[1] Gov't Ex. 7 and 9; Testimony of Eric De Los Santos. Molden and Kyle exited the Dodge Charger and fled on foot. Gov't Ex. 7. They were both taken into custody after a foot pursuit. Gov't Ex. 7; Testimony of Eric De Los Santos. Given the apparel worn by Kyle, it is highly improbable that Kyle was in possession of the two firearms while he was being chased. The Court finds credible USMS Deputy De Los Santos's testimony that he saw two weapons in the Dodge Charger. The Court further finds credible the testimony of SAPD Det. Raul Garcia, wherein he denies threatening the Defendant with a possession of firearm charge.

8. The Defendant's argument that he was not aware that law enforcement officers were attempting to stop him and did not have sirens or lights activated is no defense to the two charges in the indictment. Nevertheless, the Court finds credible the testimony of USMS Deputy De Los Santos and Bexar County Sherriff's Deputy Seth Allen that some of the law enforcement vehicles had their emergency lights activated and that it should have been readily apparent to the Defendant that law enforcement officers were attempting to stop the Defendant's vehicle. The Defendant fled the scene in an attempt to avoid capture by law enforcement officers.

9. Two firearms were observed in plain view in the abandoned Dodge Charger. From the front passenger side, a dark colored plastic bag was seen on the passenger floorboard that appeared to be covering a weapon. Testimony of Eric De Los Santos. On the driver side floorboard, USMS Deputy De

---

[1] A woman, not involved in this case, was inside the vehicle that Defendant crashed into. Her statement was included in the video introduced as Exhibit 10. The Defendant testified that no woman was in the car, continuing his argument that law enforcement officers have fabricated evidence or lied. Defendant's testimony is not credible.

3

Los Santos saw a pistol and cell phone. The two front bucket seats of the vehicle were separated by a console, which would prevent the weapons from moving inadvertently from one side of the vehicle to the other. Gov't Ex. 13B; Testimony of Eric De Los Santos; Testimony of Det. Joe Rios. Because Kyle and Molden were suspected of committing a murder, the Dodge Charger was not immediately searched, the SAPD sought a search warrant, and the vehicle was towed to a secure SAPD location. Testimony of Eric De Los Santos; Testimony of Det. Joe Rios ("scene frozen").

10. On June 26, SAPD Det. Steven Huffman was summoned to the scene to collect evidence, but because the scene may have implications regarding a suspected murder investigation, Det. Huffman informed officers at the scene that a Crime Scene Investigator ("CSI") was required to collect the evidence. Nevertheless, Det. Huffman did investigate the vehicle crash scene. Det. Huffman's body cam captured the interior of the Dodge Charger and he saw a handgun on the driver's side floorboard. Testimony of Det. Steven Huffman; Gov't Ex. 10A and 13A. The Court does not find credible the Defendant's testimony that law enforcement officers may have planted the weapons in his car.

11. The Dodge Charger was thereafter towed to a SAPD secured facility Ninth Street Pound.[2] A SAPD Crime Scene Investigator was sent to the secured facility to inventory the evidence. CSI A. Bustamante inventoried the vehicle. On the front driver's floorboard was a Glock, model G30, .45 caliber pistol, serial number GUV193. Gov't Ex. 12; Testimony of CSI A. Bustamante. Recovered from the front passenger floorboard was a Taurus, model PT24/7 G2C, .45 caliber pistol, serial number NEW12920, one round in the chamber, and several rounds in the magazine. Gov't Ex. 12, 17, 17A, 17B, 17C; Testimony of CSI A. Bustamante. Also recovered from the Dodge Charger was small amounts of drugs, and various cell phones. Gov't Ex. 12. On the driver's side floorboard, a Samsung cell phone was also located. Attached

---

[2] The Defendant argues that law enforcement officers did not secure a search warrant prior to a search of the vehicle being conducted. Because the firearm was seen in an open and obvious location, the Court need not consider Defendant's arguments regarding any improper search. *United States v. Anaya-Sanchez*, 242 Fed. Appx. 215, 217 (5th Cir. 2007) (citing *Colorado v. Bannister*, 449 U.S. 1, 2, 101 S.Ct. 42, 66 L.Ed.2d 1 (1980)).

to the Samsung cell phone was a Visa card, a Texas Driver's License card in the name of Travis Cameron Molden and a social security card in the Defendant's name. Gov't Ex. 16B.

12. The Defendant was in actual or constructive possession of a Glock, model G30, .45 caliber pistol, serial number GUV 193. The Glock was in the Defendant's possession prior to Kyle entering the vehicle or Kyle brought the Glock to the vehicle and provided the weapon to the Defendant. Defendant was able to exercise dominion and control of the Glock.

13. The firearm had travelled in interstate and foreign commerce.

14. The Government has established beyond a reasonable doubt that the Defendant is guilty of the offense of Escape. 18 U.S.C. Section 751(a).

15. The Government has established beyond a reasonable doubt that the Defendant is guilty of the offense of Felon in Possession of a Firearm. 18 U.S.C. Section 922(g)(1).

**Conclusions of Law**

1. There are three elements of the federal escape offense established by 18 U.S.C. section 751(a): (1) an escape, (2) from the custody of an institution where the prisoner is confined by direction of the Attorney General, (3) pursuant to a judgment of conviction or other process issued under the laws of the United States by a court. *United States v. Spletzer*, 535 F.2d 950, 953 (5th Cir. 1976).

2. Escape means absenting oneself from custody without permission. *United States v. Bailey*, 444 U.S. 394, 407, 100 S. Ct. 624, 633, 62 L. Ed. 2d 575 (1980).

3. The Defendant was in "custody" when he was housed at the Austin Residential Reentry Center. *United States v. Goad*, 788 F.3d 873, 875 (8th Cir. 2015). The Defendant left the facility without permission. The Defendant was confined to the facility pursuant to a judgment of conviction issued under the laws of the United States by a court.

4. The Government has established beyond a reasonable doubt that the Defendant is guilty of the offense of Escape. 18 U.S.C. Section 751(a).

5.  To establish a violation of § 922(g)(1), the government has the burden to prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005).

6.  Prior to June 26, 2018, the Defendant had been convicted of a felony. *See* SA-12-CR-459; Gov't Ex. 1; SA-18-CR-687, Docket No. 80 (Stipulation).

7.  On June 26, 2018, the Defendant knew he had been convicted of a felony. Gov't Ex. 1; SA-18-CR-687, Docket No. 80 (Stipulation).

8.  "Possession" may be one of two kinds: actual possession or constructive possession.

    a.  A person who knowingly has direct physical control over a thing, at a given time, is in actual possession of it.

    b.  A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is in constructive possession of it.

9.  Possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

10. On June 26, 2018, the Defendant was in actual or constructive possession of a Glock, model G30, .45 caliber pistol, serial number GUV 193. The firearm had travelled in interstate and foreign commerce.

11. The Government has established beyond a reasonable doubt that the Defendant is guilty of the offense of Felon in Possession of a Firearm. 18 U.S.C. Section 922(g)(1).

## **CONCLUSION**

For the foregoing reasons, the Court finds the Defendant **GUILTY** on all charges.

It is so **ORDERED**.

**SIGNED** this 2nd day of March, 2021.

Xavier Rodriguez
United States District Judge